USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-17-10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KYLE JIGGETTS,

                **Plaintiff,**

- against -

ALLIED INTERNATIONAL UNION,

                **Defendant.**

**REPORT AND RECOMMENDATION**

07 Civ. 11572 (JSR) (RLE)

**To the HONORABLE JED S. RAKOFF, U.S.D.J.:**

## I. INTRODUCTION

Kyle Jiggetts filed this *pro se* action against Allied International Union ("AIU") on December 26, 2007, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and in violation of the Americans with Disabilities Act of 1990, 29 U.S.C. §§ 12112 *et seq.* ("ADA") for the termination of his employment. Jiggetts seeks $300,000 in damages. He moved to amend his complaint on May 27, 2008, and on February 18, 2009. On March 4, 2009, the Court ruled that Jiggetts's May 27, 2008 motion to amend was granted, and that his February 18, 2009 motion to amend was denied. Pending before the Court is AIU's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, I recommend that the motion be **GRANTED**, and Jiggetts's Complaint be **DISMISSED**.

## II. BACKGROUND

Jiggetts's Complaint charges the Defendants with discrimination based on race and disability, which resulted in the termination of his employment with TriStar Patrol Service, Inc. ("TriStar") on August 4, 2006. After his termination, he filed a grievance with AIU on August 10, 2006, alleging wrongful termination. (Am. Compl. ¶ 5.) Jiggetts was given a hearing

regarding these allegations on August 17, 2006, at which he was represented by Mary Beth Stafford, the vice president of AIU and the AIU union representative. (*Id.*; Pl.'s Response to Defendant's Motion to Dismiss ("Pl.'s Resp.") at 3.) He claims that Stafford looked at his TriStar personnel file during the hearing and thus "knew of his mental health issues." Jiggetts also asserts that Stafford knew of his charges before the EEOC, the Department of Labor, and the Human Rights Commission. (Am. Compl. ¶ 6.) He alleges that during the hearing he was banned from all New York Department of Citywide Administrative Services ("DCAS") sites, and that Stafford "shook her head in agreement." (*Id.* ¶ 7.) Finally, he contends that "based on the contract, I was supposed to go to arbitration." He claims that because of the failure to arbitrate he "sent several grievances," and he was told that "they were working on it." (*Id.*) Jiggetts maintains that he continued working at DCAS sites for $10.75 per hour, instead of the $11.75 he had previously been earning. (*Id.*)

### III. DISCUSSION

#### A. Motion to Dismiss Standard

In deciding a motion to dismiss under Rule 12(b)(6), the court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In addition, under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the court must also apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original); *see Elektra Entertainment Group, Inc. v. Santangelo*, 2008 WL 4452393, at *2 (S.D.N.Y. Oct 1, 2008). A plaintiff must plead "enough facts to state a claim to relief that is

2

plausible on its face" to defeat a motion to dismiss. *Twombly*, 550 U.S. at 570; *see Johnson & Johnson v. Guidant Corp.*, 2007 WL 2456625, at *4 (S.D.N.Y. Aug. 29, 2007)).

Where a plaintiff is *pro se*, the court should apply "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Moreover, in deciding a motion to dismiss involving a *pro se* plaintiff, the court can look beyond the "four corners of the complaint" to all the pleadings before the court, including the plaintiff's opposition papers. *Pagan v. New York State Div. of Parole*, 2002 WL 398682, at *3 (S.D.N.Y. Mar. 13, 2002); *Amaker v. Haponik*, 2000 WL 343772, at *1 (S.D.N.Y. Mar. 31, 2000); *see also Burgess v. Goord*, 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999).

## B. Preemption

AIU asserts that since Jiggetts filed the same allegations before the National Labor Relations Board ("NLRB"), which determined that AIU did not violate the NLRA and also dismissed his claims against TriStar, Jiggetts is preempted from bringing this lawsuit in federal court. (Def.'s Motion to Dismiss ("Def.'s Mot.") at 9.) The evidence presented by AIU, however, shows that the claims presented to this Court are not identical to those presented to the NLRB, and therefore, Jiggetts's claims are not preempted. "When an activity is arguably subject to section seven or section eight of the Act [NLRA], the states as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted." *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959). "In determining whether a state law cause of action arising out of conduct that is arguably prohibited by section eight of the NLRA is preempted pursuant to *Garmon*, a court must consider whether the controversy at issue is identical to or different from that which could have been, but was not, presented to the NLRB." *Lopresti v. Merson*, 2001 WL

1132051 at *10 (S.D.N.Y. Sept. 21, 2001) (citing *Sears, Roebuck, & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 197 (1978)). Some courts have held that initially pursuing relief with the NLRB implicitly recognizes the NLRB's jurisdiction over the claims. *See Sheehan v. U.S. Postal Service*, 6 F. Supp. 2d 141 (N.D.N.Y. 1997); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1517 (11th Cir. 1988); *Davis Supermarkets, Inc. v. N.L.R.B.*, 2 F.3D 1162, 1178-79 (D.C. Cir. 1993).

AIU submits that the following claims presented to the NLRB are preempted: (1) that AIU failed to process his grievance regarding his involuntary transfer; and (2) that AIU failed to fairly represent its members by entering into a collective bargaining agreement that allowed TriStar to discriminate against union members with respect to transfers. (*See* Ex. A; No. 02-CB-20728; No. 02-CB-20774.) The NLRB dismissed Jiggetts's claims, finding that (1) unions have broad discretion to transfer individuals; (2) Jiggetts's transfer was not motivated by discrimination; and (3) unions have broad discretion to consider the merits of grievances and to decline to continue to process them when there is little likelihood of success. (*Id.*) Jiggetts argues that he was "not able to file an unfair labor practice against the union, AIU." (Pl.'s Resp. at 3.) In any case, the claims presented to this Court are not identical to those presented to the NLRB, and are not preempted.

## C. Duty of Fair Representation

Union members may assert claims for a breach of the duty of fair representation in federal court or before the National Labor Relations Board ("NLRB"). *Vaca v. Sipes*, 386 U.S. 171 (1967). A union's breach of its duty of fair representation may render it liable under Title VII, or the ADA. *See Nweke v. Prudential Ins. Co. of America*, 25 F. Supp. 2d 203, 220 (2d Cir. 1998). To establish a Title VII or ADA claim concerning union representation, "it is axiomatic

4

that . . . there must first be a finding that the [union] breached its duty of fair representation." *Ross v. Comm. Workers of America*, 1995 WL 351462 at *5 (S.D.N.Y. June 9, 1995). For Title VII claims, plaintiffs must show (1) that the union breached its duty of fair representation by allowing an alleged breach to go unrepaired; and (2) that the union's actions were motivated by racial animus. *Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 502 (S.D.N.Y. 2000) (citing *Morris v. Amalgamated Lithographers of America, Local One*, 994 F. Supp. 161, 169 (S.D.N.Y. 1997). The same test applies for plaintiffs alleging employment discrimination because of disability. *Nweke*, 25 F. Supp. 2d 203. A union breaches its duty of fair representation only if its actions are either arbitrary, discriminatory, or in bad faith. *Vaca*, 386 U.S. at 190. The test is whether the union's conduct or omission is "so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *NLRB v. Local 282, Int'l Brotherhood of Teamsters*, 740 F.2d 141, 147 (2d Cir. 1984) (citing *Robesky v. Qantas Empire Airways. Ltd.*, 573 F.2d 1082, 1089-90 (9th Cir. 1978). "Negligence in processing a grievance does not constitute unfair representation." *DeGennaro v. New York City Housing Authority*, 1995 WL 37850 at *6 (S.D.N.Y. Jan. 31, 1995).

A union may not arbitrarily ignore meritorious grievances or process them in a perfunctory manner, but, unions are not required to take every employee grievance to arbitration because a union member does not have an absolute right to arbitration. *Ross*, 1995 WL 351462 at *9.

### 1. Title VII

"Title VII provides a proper foundation for a duty of fair representation lawsuit in two situations: (1) where a plaintiff alleges that the union has failed to assist in the processing of a grievance grounded in an employer's underlying discrimination and/or (2) where the underlying

5

grievance does not involve actionable discrimination, but the union itself acted discriminatorily in failing to process the grievance." *Cooper*, 106 F. Supp. 2d at 498. Under Title VII, disparate impact claims require plaintiffs to establish by a preponderance of the evidence that the employer "uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(k)(1)(A)(I). There are three stages of proof necessary to establish a disparate impact claim. A plaintiff's allegations must (1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two. *See Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147,160 (2d Cir. 2001); *Attenborough v. Construction and General Bldg. Laborers' Local 79*, 2009 WL 3103783, at *9 (S.D.N.Y. Sept. 29, 2009). Jiggetts fails to meet this standard.

### a. Jiggetts Fails to Identify a Policy or Practice or the Existence of a Disparity

Jiggetts claims that "AIU discriminates against African Americans. I will provide evidence." (Compl. at 3.) He submits his November 19, 2004 grievance as evidence alleging that other African American union members do not have a job site, and that another worker has been repeatedly written up at her new job site. (Am. Compl. - unnumbered exhibit.) He claims that the supervisors are Hispanic and biased toward African Americans. (*Id.*) Additionally, he contends that AIU discriminated against him and his co-workers because of their race, and that AIU never went to arbitration for them. (Pl.'s Resp. at 3.) Finally, he submits three affidavits from two co-workers alleging that they have suffered racial discrimination as employees of TriStar. (Am. Compl.- unnumbered exhibit.)

These allegations do not identify a neutral practice or policy with a disparate impact. Moreover, while there are conclusory statements concerning treatment of some African

6

Americans, there is no basis to compare their treatment to white workers or to access any alleged disparate impact.

### b. Jiggetts's Allegations Do Not Support a Disparate Treatment Claim

To the extent the claims are construed to be based on intentional discrimination, they are also conclusory. Jiggetts fails to make adequate claims of disparate treatment. While he alleges that some African Americans have no jobs and some have been "written up," he cannot bring disparate treatment claims on their behalf. More importantly, he fails to identify any similarly situated white employees who were treated differently from him.

Even were the Court to find there was a claim of disparate treatment, Jiggetts has failed to allege any non-conclusory facts to show that the union failed to adequately represent him or that its failure was racially motivated. He has failed to plausibly assert that AIU did not meet its duty of fair representation. Jiggetts argues that AIU failed to arbitrate his claim, but he had no right to arbitration. AIU did not ignore or perfunctorily process his grievance about employment discrimination and wrongful termination. Rather, it represented him at the August 17 hearing.

### 2. Americans with Disabilities Act

A labor union may not discriminate against an individual because he or she has a disability within the meaning of the ADA. *Nweke*, 25 F. Supp. 2d at 220. Disability under the ADA is defined as (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1)-(2). Major life activities include: caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, learning, reading, concentrating, thinking, communicating, and working. *Id*. To substantially limit a major life activity, the impairment must be significant, and not merely trivial. *Nweke*, 25

7

F. Supp. 2d at 227 (citing *Reeves v. Johnson Controls World Service, Inc.*, 140 F.3d 144, 151 (2d Cir. 1998). To be regarded as having an impairment, a plaintiff must establish that he has been subjected to a prohibited action[1] because of actual or perceived mental or physical impairment, regardless of whether it limits a major life activity. 42 U.S.C. § 12102(3)(A).

Jiggetts has failed to show that his condition meets the definition of a "disability." *See* 42 U.S.C. § 12102(1)-(2). He has provided no factual allegations to support an ADA claim because he has not shown that he has a physical or mental impairment that substantially limits a major life activity, a record of impairment, or that he is regarded as having such an impairment. Even assuming anxiety and depression are a mental disability, Jiggetts has provided no factual allegations that his disability substantially limits any of his major life activities. He submits three doctor's letters as proof of his mental health condition. (Am. Compl. - unnumbered exhibits.) Additionally, he attaches a letter of confirmation that he attended a rehabilitation facility for substance abuse treatment in July 1994. (*Id.*) While these submissions might show that Jiggetts suffers from depression and anxiety, they do not show or allege that his disability substantially limited, or even marginally limited, any of his major life activities. Jiggetts also fails to meet the second definition of disability because he does not provide support for a finding that he has a record of a mental health condition that substantially limits his work, or any other life activity. His submissions merely state that he is being treated with psychotherapy for depression and anxiety. (Am. Compl.) None of the doctors contend that his condition limits any of his activities. Finally, Jiggetts has not shown that he is regarded as having an impairment because he has not

---

[1]Prohibited actions include discrimination against people with disabilities in the areas of employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services. 42 U.S.C. § 12101.

established that he was subjected to a prohibited action (e.g. terminated from employment) because of his depression and anxiety. *See* 42 U.S.C. § 12102(3)(A).

Even if Jiggetts were considered a person with a disability, he fails to plausibly show any failure by AIU to fairly represent him. He asserts that since Stafford knew of his mental health condition, she should have "forced arbitration." (Pl.'s Resp. at 3.) He also maintains that AIU had no intentions of representing him. (*Id.* at 2.) To support his claim, he submits grievances from August 10, 2006 ("I'm protected by the ADA."); November 10, 2006 ("I'm protected by the ADA."); and July 5, 2007 ("You well know I have mental health issues because you viewed my personnel file at the hearing. I'm waiting to go to arbitration as the contract states."). Construing the facts in Jiggetts's favor, his allegations could imply that he lost his job because of his disability, and AIU subsequently failed to represent him by not arbitrating. (*See* Am. Compl.) However, AIU represented him at the hearing. Even if Jiggetts is claiming that his representation at the hearing was inadequate because Stafford "shook her head in agreement," such an action is not negligent because unions have "considerable discretion in sifting out grievances which it regards as lacking merit." *Buchanan v. NLRB*, 597 F.2d 388, 394 (4th Cir. 1979) (citing *Vaca*, 386 U.S. at 191-95). Moreover, pursuing a meritless grievance harms the bargaining unit as a whole. *DeGennaro*, 1995 WL 37850 at *6. Jiggetts provides no factual allegations that he was fired because of his disability. The gravamen of Jiggetts's claim is that AIU should have done more to represent him because they knew of his disability. Jiggetts has not provided any factual allegations that AIU failed to fairly represent him.

Jiggetts's factual allegations are simply that AIU had knowledge of his condition and failed to arbitrate on his behalf. He makes no attempt to connect the two. Mere knowledge of an individual's inclusion in a protected category is not enough to infer that any adverse action was

9

based on that status. Jiggetts had no guaranteed right to arbitration, and clearly not all claims go to arbitration. There are no facts alleged nor circumstances described which implicate bias on the basis of disability.

## D. Retaliation

Jiggetts makes a retaliation claim by checking the "retaliation" box of his Complaint. (*See* Compl. & Am. Compl.) He makes no factual allegations about retaliation by AIU. Therefore, his retaliation claim is no more than an assertion of a claim, if that, and should be **DISMISSED.**

## IV. CONCLUSION

In conclusion, I recommend that Allied International Union's Motion to Dismiss be **GRANTED**, and Jiggetts' Complaint be **DISMISSED**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); FED. R. CIV. P. 72, 6(a), 6(d).

Dated: March 16, 2010
New York, New York

                                              Respectfully Submitted,

                                              */s/ Ronald L. Ellis*

                                              The Honorable Ronald L. Ellis
                                              United States Magistrate Judge

**Copies of this Report and Recommendation were sent to:**

*Pro Se* Plaintiff
Kyle Jiggetts
1595 Unionport Road, #9D
Bronx, NY 10462

Counsel for Defendant
Scott I. Unger
Stark & Stark, P.C.
P.O. Box 5315
Princeton, NJ 08543

# EXHIBIT A

06/27/2006  11:25    516-742-0204              ALLIED INT UNION                         PAGE  05/05

FORM NLRB-508                                                    FORM EXEMPT UNDER 44 U.S.C. 3512
                    UNITED STATES OF AMERICA                     DO NOT WRITE IN THIS SPACE
                 NATIONAL LABOR RELATIONS BOARD                  Case              Date Filed
              CHARGE AGAINST LABOR ORGANIZATION                  2-CB-20774        6|20|06
                        OR ITS AGENTS

INSTRUCTIONS:
File an original and 4 copies of this charge and an additional copy for each organization, each local, and each individual named in item 1 with the NLRB Regional Director of the region in which the alleged unfair labor practice occurred or is occurring.

**1. LABOR ORGANIZATION OR ITS AGENTS AGAINST WHICH CHARGE IS BROUGHT**

| a. Name | b. Union Representative to contact |
|---|---|
| Allied International Union | Peggy Vanson, President |

| c. Telephone No. & Fax No. | d. Address (street, city, state and ZIP code) |
|---|---|
| (516) 742-6320  (516) 742-0204 | 332 Willis Avenue, Mineola, New York 11501 |

e. The above-named organization(s) or its agents has (have) engaged in and is (are) engaging in unfair labor practices within the meaning of section 8(b), subsection(s) **(1)(A)** of the National Labor Relations Act, and these unfair labor practices are unfair practices affecting commerce within the meaning of the Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

On or around May 11, 2006, the above-named labor organization, by its officers, agents and representatives, has failed and refused to fairly represent its members by entering into a collective bargaining agreement which contained a provision allowing Tri-Star Security to discriminate against Union members with respect to transfers.

By these and other acts, the above-named labor organization has restrained and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act.

| 3. Name of Employer | 4. Telephone No. & Fax No. |
|---|---|
| Tri-Star Security | (718) 772-0032 |

| 5. Location of plant involved (street, city, state and ZIP code) | 6. Employer representative to contact |
|---|---|
| 1446 Commerce Avenue  Bronx, NY 1061 | Earl Thomas, Human Resources Manager |

| 7. Type of establishment (factory, mine, wholesaler, etc.) | 8. Identify principal product or service | 9. Number of workers employed |
|---|---|---|
| Security | Security | Approx. 2,200 |

10. Full name of party filing charge
Kyle Jiggets

| 11. Address of party filing charge (street, city, state and ZIP code) | 12. Telephone No. & Fax No. |
|---|---|
| 1036 East 216th Street  Bronx, NY 10469 | (718) 653-1807 |

**6. DECLARATION**
I declare that I have read the above charge and that the statements therein are true to the best of my knowledge and belief.

By _Kyle Jiggets_  Title An Individual
Signature of representative or person making charge  Kyle Jiggets
Address:                                              Tel.              Date
11. Address of party filing charge (street, city, state and ZIP code)  (same as above)  6/20/06
(same)

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT
(U.S. CODE, TITLE 18, SECTION 1001)

05/12/2006  12:23   516-742-0204           ALLIED INT UNION                          PAGE  07/07

FORM NLRB-508
UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
CHARGE AGAINST LABOR ORGANIZATION
OR ITS AGENTS

FORM EXEMPT UNDER 44 U.S.C. 3512
DO NOT WRITE IN THIS SPACE

| Case | Date Filed |
|---|---|
| 2-CB-20728 | 5\|9\|06 |

INSTRUCTIONS:
File an original and 4 copies of this charge and an additional copy for each organization, each local, and each individual named in item 1 with the NLRB Regional Director of the region in which the alleged unfair labor practice occurred or is occurring.

**1. LABOR ORGANIZATION OR ITS AGENTS AGAINST WHICH CHARGE IS BROUGHT**

| a. Name | b. Union Representative to contact |
|---|---|
| Allied International Union | Peggy Vanson, President |

| c. Telephone No. & Fax No | d. Address (street, city, state and ZIP code) |
|---|---|
| (Tel) 516-742-6320 | 332 Willis Avenue |
| (Fax) 516-742-0204 | Mineola, New York 11501 |

e. The above-named organization(s) or its agents has (have) engaged in and is (are) engaging in unfair labor practices within the meaning of section 8(b), subsection(s) (1)(A) of the National Labor Relations Act, and these unfair labor practices are unfair practices affecting commerce within the meaning of the Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Within the last six moths, the above-named labor organization, through its officers, agents and representatives has failed and refused to process the grievance of Kyle Jiggetts, regarding his involuntary transfer from his initial job site by the below-named Employer for reasons that are discriminatory, arbitrary or otherwise unlawful.

Initial job site: One Centre Street, New York, NY

Present job site: 1932 Arthur Avenue, Bronx, NY

By these and other acts, the above-named labor organization has restrained and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act.

| 3. Name of Employer | 4. Telephone No. & Fax No |
|---|---|
| Tri-Star Patrol Service, Inc. | (718) 772-0032 |
| 5. Location of plant involved (street, city, state and ZIP code) | 6. Employer representative to contact |
| 1446 Commerce Avenue  Bronx, NY 10461 | Earl Thomas, Human Resource Manager |

| 7. Type of establishment (factory, mine, wholesaler, etc.) | 8. Identify principal product or service | 9. Number of workers employed |
|---|---|---|
| Security Contractor | Security Service | 100+ |

10. Full name of party filing charge
Kyle Jiggetts

| 11. Address of party filing charge (street, city, state and ZIP code) | 12. Telephone No. & Fax No |
|---|---|
| 1036 East 216th Street, Apt. 1  Bronx, NY 10469 | (718) 653-1807 |

**6. DECLARATION**
I declare that I have read the above charge and that the statements therein are true to the best of my knowledge and belief.

By _[signature]_ Signature of representative or person making charge Kyle Jiggetts   Title An Individual

Address: Same as above   Tel. Same as above   Date May 9, 1006

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT
(U.S. CODE, TITLE 18, SECTION 1001)



**United States Government**

**NATIONAL LABOR RELATIONS BOARD**

Region 2

26 Federal Plaza – Room 3614

New York, New York 10278-0104

Telephone: (212) 264-0300
Facsimile: (212) 264-2450

October 31, 2006

Kyle Jiggetts
1036 East 216th Street, Apt. 1
Bronx, New York 10469

Re: Tri-Star Security
Case Nos. 2-CA-37648, 2-CA-37823;
and
Allied International Union
(Tri-Star Security)
Case Nos. 2-CB-20728, 2-CB-20774

Dear Mr. Jiggetts:

The Region has carefully investigated and considered your charges against Allied International Union alleging that the Union violated Section 8(b)(1)(A) of the Act and your charges against Tri-Star Security alleging that the Employer violated Section 8(a)(1) and (3) of the Act.

*Decision to Dismiss:* Based on the investigation, I have concluded that further proceedings are not warranted, and I am dismissing your charges for the following reasons.

You have alleged in your charges against the Employer that the Employer transferred you and other employees because you attempted to enforce the collective bargaining agreement by filing charges with the New York State Department of Labor and engaged in other protected concerted activities. The investigation established that you and other employees were transferred from One Center Street to various locations in and about New York City. However, the evidence did not establish that the transfers were motivated by discrimination based on complaints to the Department of Labor or because of other activities. Rather, the investigation revealed that the Employer frequently transfers workers from one site to another for a variety of reasons, including the preferences of the workers and the clients. Further, the investigation failed to uncover any evidence that the other transferred workers filed Department of Labor complaints or engaged in other arguably concerted activity which might have triggered a discriminatory response.

With respect to your allegation that you were discharged because of your support for and organizing efforts on behalf of Local 32BJ, SEIU, a rival union to the incumbent charged party union, the evidence is also insufficient to establish a violation. The investigation revealed

2

that you were discharged for requesting sick leave, which was approved, when you were in fact engaged in organizing efforts on behalf of Local 32BJ. While your discharge may have had some connection to your activity taken in furtherance of your support for Local 32BJ, the Employer had good reason to believe that you had requested sick leave under false pretenses, which is not protected. Further, while the Employer clearly knew about your union activities and may have harbored some hostility toward you for these activities, it does not appear based upon a consideration of all the evidence that but for your union activity you would have been retained by the Employer, notwithstanding your unprotected conduct.

Your charges against the Union are also without merit. With respect to your contention that the Union breached its duty of fair representation by failing to process your grievance regarding your involuntary transfer, I note that the collective bargaining agreement gives the Employer broad discretion to transfer employees from one location to another. It further, appears that the Union was unable to find evidence to support your claim that the transfer was in retaliation for complaints you had made to the Department of Labor. Unions have broad discretion to consider the merits of grievances and to decline to continue processing them when there is little likelihood of success. In the circumstances at issue here, I do not find that the Union breached its duty of fair representation by refusing to process your grievance.

Similarly I do not find that the Union acted unlawfully by allegedly entering into a contract with the Employer that permits the Employer to discriminate against Union members with respect to transfers. While the contract gives the Employer broad latitude in transferring employees, it also contains a clause specifically prohibiting discrimination on a variety of bases, including activity protected under Section 7 of the Act. The fact that the Union did not concur with your assessment that you were discriminated against in this case does not establish the contract protects or permits unlawful discrimination, nor is there any other evidence which would establish this.

Inasmuch as the evidence does not establish that either the Union or Employer violated the Act as alleged or in any other manner encompassed by your charges, I am dismissing your charges.

*Your Right to Appeal:* The National Labor Relations Board Rules and Regulations permit you to obtain a review of this action by filing an appeal with the **GENERAL COUNSEL** of the National Labor Relations Board, Attn: Office of Appeals, Room 8820, 1099 14th Street, N.W., Washington, D.C. 20570-0001, and a copy with the **REGIONAL DIRECTOR**.

Use of the Appeal Form (Form NLRB-4767), will satisfy this requirement. You should also notify all other parties to your case and their representatives that an appeal is being filed. A copy of the Appeal Form is sufficient.

*Appeal Due Date:* The appeal must be received by the General Counsel in Washington, D.C. by the close of business at 5:00 p.m. (EST), on November 14, 2006. If you mail the appeal, it will be considered timely filed if it is postmarked no later than one day before the due date set forth above. The appeal **MAY NOT** be filed by facsimile transmission or by using the Internet.

*Extension of Time to File Appeal:* Upon good cause shown, the General Counsel may grant you an extension of time to file the appeal. You may file a request for an extension of time to file by mail, facsimile transmission, or through the Internet. The fax number is (202) 273-4283. Special instructions for requesting an extension of time over the Internet are set forth in the attached Access Code Certificate. While an appeal will be accepted as timely filed if it is

3

postmarked no later than one day prior to the appeal due date, this rule does not apply to requests for extensions of time. A request for an extension of time to file an appeal should be received on or before the original appeal due date. A request that is postmarked prior to the appeal due date but received after the appeal due date will be rejected as untimely. Unless filed through the Internet, a copy of any request for extension of time should be sent to me.

*Appeal Contents:* You are also encouraged to submit a complete statement setting forth the facts and reasons upon which your appeal is based to the General Counsel and to the Regional Director. A copy of your statement need not be sent to other parties to your case.

*Confidentiality/Privilege*: Please be advised that we cannot accept any limitations on the use of any appeal statement or evidence in support thereof provided to the Agency. Thus, any claim of confidentiality or privilege cannot be honored, except as provided by the FOIA, 5 U.S.C. 552, and any appeal statement may be subject to discretionary disclosure to a party upon request during the processing of the appeal. In the event the appeal is sustained, any statement or material submitted may be subject to introduction as evidence at any hearing that may be held before an administrative law judge. Further, we are required by the Federal Records Act to keep copies of documents used in our case handling for some period of years after a case closes. Accordingly, we may be required by the FOIA to disclose such records upon request, absent some applicable exemption such as those that protect confidential source, commercial/financial information or personal privacy interests (e.g., FOIA Exemptions 4, 6, 7(C) and 7(D), 5 U.S.C. § 552(b)(4), (6), (7)(C), and (7)(D)). Accordingly, we will not honor any requests to place limitations on our use of appeal statements or supporting evidence beyond those prescribed by the foregoing laws, regulations, and policies.

*Address for Appeal:* The appeal should be sent to the General Counsel of the National Labor Relations Board, Office of Appeals, 1099 14th Street, N.W., Washington, D.C. 20570. You should send a copy of the appeal to me.

*Notice to Other Parties of Appeal:* You should notify the other party(ies) to the case that an appeal has been filed. Therefore, at the time the appeal is sent to the General Counsel, please complete the enclosed Appeal Form and send one copy of the form to all parties and representatives whose names and addresses are set forth in this letter. If you have submitted a statement regarding your appeal, a copy of your statement need not be sent to other parties to your case. Mailing the Appeal Form to the parties does not relieve you from filing the Appeal Form itself with the General Counsel and sending a copy of the Appeal Form to me by the due date.

Very truly yours,

Celeste J. Mattina
Regional Director

4

Enc.
cc:
National Labor Relations Board
Attn: General Counsel,
Office of Appeals
1099 14th St. NW, Room 8820
Washington, DC 20570

Allied International Union
Att: Peggy Vanson, President
332 Willis Avenue
Mineola, NY 11501

Tri-Star Security
Att: Earl Thomas, Human Resources Manager
14446 Commerce Avenue
Bronx, NY 10461

Alan Compagnon, Esq.
Weissman & Mintz, LLC
80 Pine Street
New York, NY 10005

Local 32BJ, SEIU
Attn.: Larry Engelstein, Esq.
101 Avenue of the Americas
New York, NY 10016

Local 32BJ, SEIU
Attn.: Andrew Strom, Esq.
101 Avenue of the Americas
New York, NY 10016

Service Employees International Union
Attn.: Judith A. Scott,
General Counsel
1313 L Street, NW
Washington, DC 20005

 Print

| Unfair Labor Practice (Complaint Case) Case Information Display ||
|---|---|
| Case Name | Allied International Union (Tri-State Patrol Service, Inc.) |
| Case Number | 02-CB-20728-001 |
| Date Case Filed | 05/09/2006 |
| Date Complaint Issued | No Complaint Was Issued. |
| Date Case Closed | 11/15/2006 |
| Dispute State/Zip/Region | NY/ 11501/ Region 02 |
| Appeal Determination | No Appeal Determination Data Available. |
| Advice Determination | No Advice Determination Data Available. |
| A.L.J. Determination | No ALJ Determination Data Available. |
| Board Determination | No Board Determination Data Available. |
| Regional Action(s) | 10/31/2006 - Dismissal letter Issued |
| Section(s) of the Act | 8(b)(1)(A)Duty of Fair Representation |
| Close Method | Dismissal, Not Adjusted |
| Close Timing | Pre-Complaint |
| NAICS Code | Security Guards and Patrol Services |
| Charged Party | Allied International Union |
| Union Name | No Union Data Is Available. |
| Employer Name | No Employer Data Is Available. |
| Case Status | Closed |

✕ Close

 Print

| Unfair Labor Practice (Complaint Case) Case Information Display ||
|---|---|
| Case Name | Allied International Union (Tri-Star Security) |
| Case Number | 02-CB-20774-001 |
| Date Case Filed | 06/20/2006 |
| Date Complaint Issued | No Complaint Was Issued. |
| Date Case Closed | 11/15/2006 |
| Dispute State/Zip/Region | NY/ 10461/ Region 02 |
| Appeal Determination | No Appeal Determination Data Available. |
| Advice Determination | No Advice Determination Data Available. |
| A.L.J. Determination | No ALJ Determination Data Available. |
| Board Determination | No Board Determination Data Available. |
| Regional Action(s) | 10/31/2006 - Dismissal letter Issued |
| Section(s) of the Act | 8(b)(1)(A)Duty of Fair Representation |
| Close Method | Dismissal, Not Adjusted |
| Close Timing | Pre-Complaint |
| NAICS Code | Security Systems Services (except Locksmiths) |
| Charged Party | Allied International Union |
| Union Name | No Union Data Is Available. |
| Employer Name | No Employer Data Is Available. |
| Case Status | Closed |

× Close